You may proceed whenever you're ready. Thank you and may it please the court. This case is about a simple injustice. It should not be possible for an individual to lose her taxpayer-funded job due to an easily accommodated physical disability. If the Americans with Disabilities Act and the Rehabilitation Act stand for anything, it's for equal opportunity of the exact sort Ms. Smith was denied. But first I need to address issues of misclassification and joint employee status. So I'll start there. From 2013 to 2017, Ms. Smith worked on a DEA contract in Springfield, Virginia. The contract was administered by a couple of different companies over the years, but CSRA administered the contract at all times relevant to this complaint. During that period, Ms. Smith had control over her own work and her own work schedule so long as she provided the deliverables her contract required. In April 2017, Mark Shafranek, the DEA's Chief Technology Officer, told Ms. Smith that her work site was going to change to DEA headquarters. But at DEA headquarters, everything about Ms. Smith's work changed. This was a complete break from the way she had been treated at Springfield. When she reported to DEA headquarters, suddenly Ms. Smith was told when to work, how to work, how she must do her work, how many hours per day she was allowed to work. She was treated exactly like the DEA and CSRA employees around her. And her program manager, Scott Barnhart, made that clear in his deposition. He noted that the only difference between contractors and employees were compensation and benefits, which are certainly factors here, but by themselves are not sufficient to determine independent contractor classification. This court laid out a test for joint employment in Butler v. Drive, the automotive industry. Okay, but Mr. Ehrlich, it seems to me that perhaps you may be deviating from the main point that we've got to consider. She said she was an independent contractor. Everything that she signed was that she was an independent contractor. So really isn't the proper focus here what remedies she had as an independent contractor? Does the Rehabilitation Act cover independent contractors? Isn't that really where we need to look? I don't believe so, Your Honor, for a couple of reasons. One, the Garrett test looks to 11 factors, the 11th of which is the- Yeah, but what about the fact she said that she was an independent contractor? Please address that before you go. Absolutely, and I'm not going to go through all 11 Garrett factors, but the 11th one is the intention of the parties. And it is not among the factors that it is most important in the analysis. And we don't contend that Ms. Smith was anything but an independent contractor until she moved from the DEA work site in Springfield to the DEA work site at headquarters in Arlington, at which point the terms of her employment completely changed. When she moved there, well, as I mentioned, Scott Barnhart said, her program manager, that CSRA employees and contractors were given the exact same treatment. And as the court mentioned or laid out in Butler, there's a test for finding joint employment status. And the district court erred in the way that it applied that test because what it did was compare CSRA and the DEA's roles in Ms. Smith's employment rather than considering the factors together to determine if collectively the two entities amounted to joint employers. So, Mr. Ehrlich, can I interrupt you and just make sure I understand the framework of this issue? I appreciate that being an issue for the claims as it relates to CSRA. Isn't it true that neither party below addressed that issue as it relates to DEA? And is that only because the DEA chose to concede that for the sake of argument and focus only on the merits? And it's impossible for the court to have considered joint employment with DEA and CSRA had the issue not been addressed with CSRA. So, my position is by addressing joint employment with CSRA, you can't do that in a vacuum. You have to look at both employers, which is one of the concerns we have about the district court opinion. Am I right that your only claim against DEA is with respect to the Rehabilitation Act? Yes, that's right. The ADA would not apply. And why doesn't the ADA apply? Excuse me, Mr. Ehrlich, why doesn't the ADA apply? It doesn't apply because she's an independent contractor, isn't that correct? It doesn't apply because... So, if it doesn't apply because she's an independent contractor, is that what you're going? I do understand what you're saying. Title I of the ADA would not apply because they were a government employer, not because she was an independent contractor. Although, I concede it does not apply to independent contractors, but our position is that she was correctly classified as an employee, which is not foreign to the cases in this circuit. In Trump v. Department of Navy, the Eastern District of Virginia found a contractor who had been at the Department of the Navy for just one year was considered a joint employee with the Department of the Navy, even though there was no formal employment relationship. An example of what I was saying about the district court is that it found that although CSRA had the contractual authority to terminate Ms. Smith's contract, it was the DEA that directly caused the termination of Plaintiff's contract. And we contend that the contrast around there is exactly backwards. The issue is that taken together, CSRA and DEA had such authority. Because Butler states that the joint employment doctrine captures instances in which multiple entities control an employee, and that the reason the test exists is to, quote, pierce the formalities of an employment relationship to determine the loci of effective control. How could Smith be an employee of the DEA when she wasn't even an employee of CSRA? In her contract with CSRA, she disclaimed any employment relationship and said she was an independent contractor. So how do you get the leap to her being an employee of the agency hiring the prime contractor? Seems to me you're trying to punch a square peg into a round hole. Absolutely, Your Honor. The way that we get there is, first of all, that this court has made that leap at least twice in the past, and we believe several more times. In Luna Reyes v. RFI Construction, LLC, and Salinas v. Commercial Interiors, Inc., this court found that an independent contractor was not only an employee of the entity that contracted that person, but in fact, a joint employee of the prime contractor above. So this court has made that leap. To the best of our research, this court has not made that leap in a discrimination case, but the... Is it in the context of statutory employment? It is in the context of statutory employment. That's an entirely different construct, isn't it? I'm sorry, Your Honor. I misspoke. I apologize. It's in the context of employment as evaluated under the Garrett and Butler test. I apologize for that. As I was mentioning, Salinas and Luna Reyes, and there's also a case involving AT&T, were all Labor Standards Act cases, but the analysis done was the same analysis. There's really no reason that this court can't use that analysis in the discrimination case. If there aren't any other questions about independent contractor issues, I'll move on to the accommodations issues. There's no disagreement that Ms. Smith had a disability, and there's no doubt that if the ADA and Rehab Act apply in this case, she's a qualified individual with a disability. When, in April 2017, Mark Schaffernick told Ms. Smith that her worksite would change to the DEA headquarters, Ms. Smith took immediate steps to secure the accommodation she needed. On April 28th, 2017, prior to changing worksites, Ms. Smith reached out to her program manager to secure the same accommodations that she had had for years at her new worksite. Once Ms. Smith moved to DEA headquarters without the accommodations she needed, there was a preliminary discussion of a part-time work schedule as a potential accommodation. When the district court evaluated that issue, it erred in finding that the part-time schedule could be a reasonable accommodation in this instance, and that such a schedule was even formally offered to Ms. Smith. The part-time schedule would not address the core concern that Ms. Smith needed to be accommodated, which is that a walk from the DEA parking available for contractors to DEA headquarters caused her excruciating pain. Asking her to do that three times a week instead of five times a week did not address the actual underlying issue. It is the same thing as if Ms. Smith used a wheelchair and she was told that she had to access a building that did not have a wheelchair around. They were simply asking her to do something impossible. It was not a reasonable accommodation to ask her to do something that she could not do. Regarding the issue of whether that was ever actually offered to her, there was a preliminary discussion on May 10th, and Ms. Smith did respond negatively to that. We know that CSRA and DEA did not take that as a rejection of the offer because they continued to work on it. On May 19th, 2017, the DEA finalized a formal offer of an accommodation to Ms. Smith, but they never sent it to her. There is no document showing that Ms. Smith ever actually saw that offer. While it is true that appellees need not provide the exact accommodation for Ms. Smith that she sought, they were required to provide a reasonable accommodation. Mr. Ehrlich, I think I understand your argument about the part-time offer. I can appreciate that you make less income and it does not completely solve the problem. The definition of accommodation includes part-time, so do you not have to consider the part-time offer in conjunction with the inquiry about the parking pass that was ultimately given? I know your client wishes and complains that it was not done sooner, but do not those things work together? They offered a temporary option that would have required, granted it fully solved the problem, but it requires less of that physical burden while they are looking at the parking pass, which they ultimately granted. Help me understand why those two things do not together address the accommodations issue. Absolutely. There are reasonable, low-cost accommodations that appellees could have offered that would address the concern in a stopgap way until the parking pass was granted. For example, the circuits recognized leave without pay as a reasonable accommodation. While Ms. Smith would not have been particularly happy about leave without pay, it would have addressed the core concern that she could not make that walk without excruciating pain. Instead, what they offered was something that was simply impossible for her to accept. It does not amount to a reasonable accommodation by any definition. Mr. Ehrlich, I am concerned that her evidence, correct me if I am wrong, but I did not see any statement that she had to telework. There is medical information in the record to support her request for the parking pass, but not for teleworking. Do not we need to focus on the parking pass and why that was not a reasonable accommodation? There are a couple of notes from doctors on May 4th and May 9th. I believe the May 4th note was a physical therapist. I am perfectly happy to focus exclusively on the parking pass, because had she received the parking pass, she would have done what the company and what the appellees wanted her to do. She would have come to work every day, and she would not have had to walk a long distance in a way that her spinal injury did not allow. What I am saying is that although I do not think five weeks is an unreasonable amount of time to provide her with the parking pass, that in that interim, they created a situation where they asked her to do the impossible and then terminated her because she was unable to do the consistent with the ADA or the rehabilitation. What about the evidence that they terminated her because she insisted on continuing to report to Mr. Schaffernick and not to Mr. Tyler and Mr. Chen if she had been required once they moved to DEA headquarters? Also, there was an issue, I think, on her having some personal information on her computer. I guess that was not ever proved, but apparently there was a clear violation of the chain of command, and there does not seem to be any material dispute in the record. She was still reporting to Schaffernick even though they told her she had a new boss. Absolutely, Your Honor, and I am happy you mentioned that. With respect to reporting to Mr. Schaffernick, her contract specifically says that she reports to Mr. Schaffernick and that her deliverables go to Mr. Schaffernick. One of the reasons that supports her change from an independent contractor to an employee status is because Appellees started violating the contract, at which point she was an individual who went to work and did labor inconsistent with her contract in a way that can really only be described as employment. With respect to the information security issues, those are disputed issues of material fact. Without getting into the weeds of it, functionally what happened was Ms. Smith was set up with two different accounts to access DEA information. There was never any improper information on Ms. Smith's DEA laptop or personal laptop. What it was was that the account that she used to access DEA information for years was set up at her work laptop. Then the account that she used when they moved her to DEA headquarters, they set up a totally new account. Because they set up a totally new account, she did not have access to any of her prior work. Without access to her prior work, she could not keep doing her job. Those are all things that we feel we can very comfortably contend at trial. They are disputed issues of material fact. In reality... Mr. Ehrlich, I didn't mean to cut you off. The record is unclear as to exactly what sort of work she was doing. You said she was a geospatial analyst. To help us understand her ability to work remotely, you are saying her job was totally computer oriented. Is that right? That's right. Her job was... What was her educational background? What kind was she actually doing? She was hired according to her contract as a subject matter expert in these geospatial intelligence issues that are used for law enforcement. She had access to non-classified but sensitive government information. My understanding of her work, which I'm certainly not an expert in, is that she essentially used geospatial information to support law enforcement efforts at the DEA, but also across agencies. She was a computer expert. Is that what you're saying? Her work was all computer oriented. She is a geospatial intelligence expert. How is somebody trained for that? I don't want to belabor it, but it just helps us to understand. Your Honor, I can't say that I remember exactly what her educational background is, but if I have any time for rebuttal, I'd be happy to mention it when I get back. One last thing, and then I'm way over, so I will stop after that. Counselor, are you asking for extra time? No, I'm not. I'll stop here. I think I've addressed everything I need to address. You want to just conclude, but you have time reserved. Here's a quick question. Everything that she needed for her job was on the computer, correct? That's absolutely correct. I understand you can't talk about what she did because it's a sensitive thing, but to complete her job, she could sit in front of that computer whether she was a thousand miles away or in the office. Isn't that right? Not only is that completely correct, but Mark Schafernick had four similar employees move to DEA headquarters. Of those four, Ms. Smith's remote work token was withdrawn. The only other thing I was going to mention is that among the ways that appellees stopped abiding by Ms. Smith's contract is that Ms. Smith was told by Kevin Tseng, her new supervisor, that she was no longer to act as a subject matter expert. At that point, she wasn't a subject matter expert. She wasn't reporting to the person who her contract said she had to report to. She was being treated as an at-will employee who has to do what the boss says, which is a perfectly fine thing to be, but it's not a subcontract. Go ahead. What did you say? I was just going to say thank you for your time. Oh, okay. Thank you, Mr. Earler. Ms. Levinson? Thank you, your honors, and may it please the court. Plaintiff Tina Smith, a former DEA subcontractor, brought two Rehabilitation Act claims in this case, one for failure to accommodate and one for retaliatory termination for services to DEA. I will address each one of these in turn. As to plaintiff's failure to accommodate claim, plaintiff failed to contest a summary judgment, and the record evidence is unrebutted that DEA offered plaintiff two accommodations, including one accommodation that she expressly requested during the short period that she worked at DEA headquarters. Specifically, within days of starting at DEA headquarters, DEA offered plaintiff part-time work on site that she rejected. As plaintiff has conceded in this opening argument, three weeks later, DEA offered plaintiff her preferred accommodation of a parking pass. Plaintiff's only argument regarding the part-time work- Wait a minute, counsel. You said how many weeks after? Did you give a parking space?  You went from the first request, you go to part-time, not a parking space. We recently had a case to talk about in terms of what arsenal is available for accommodations, and this is sort of reverse engineering. There was a question of whether or not the person wanted a question that cannot bump someone else in terms of seniority, and we laid out that might be something in the arsenal, but you don't get to that first. So you start with part-time. I mean, pardon me, but most people can't afford just to have a two-fifth reduction in their pay and a reasonable accommodation. You start there, and then three weeks later, you have, oh, we can't give you a parking space. Is that, you believe that that's a good faith fulfillment of accommodation, where you start off saying, oh, we'll accommodate you. Take two-fifths less of your pay. Your Honor- You're more consistent with the law? Pardon me. Your Honor, the ADA is quite clear that part-time accommodation is reasonable, and not that 42 USD- It's reasonable in some circumstances, but it's not... That would be, if that's reasonable per se, you would say every request could be, all right, well, we'll reduce your burden by two-fifths. You said- Certainly, Your Honor. So you're saying that that complies with the law just because that is something in the arsenal? Your Honor, oh, pardon. It's a continuum, isn't it? You start there. I would certainly note that it's a fact-based inquiry. Plaintiff, however, in his opening argument, offered the idea of leave without pay as a first reasonable accommodation, and this part-time offer would certainly pay plaintiff, who the record shows was making about $360,000 a year. It would certainly give her more income than leave without pay. I would also note the plaintiff was asking to appear at DEA 50% of the time, and that was an accommodation that DEA could offer immediately to try and meet that request. It's also worth noting, contrary to plaintiff's argument in the opening, the plaintiff's work was not exclusively confined to a computer. In fact, she was a liaison between, self-described, between multiple parts of the government and DEA on the geospatial mapping program. Indeed, on her first communications with DEA, for example, on page, DEA headquarters on page JA842, expressed that she'll be moving to different, going to DOJ JMD one of her first days there, and would be at a five-day conference at the National Geospatial Intelligence Agency on one of the weeks when she was supposed to start at DEA headquarters. Contrary to plaintiff's own arguments, the part-time offer was an effort to allow plaintiff to come into the office, but to do so in a way that would try and meet her needs. It is also worth noting, for example, in this court's precedent in Hannah P versus Coates, that DEA observed that the program on which plaintiff was working was not doing well, and that is the whole reason why her services were moved under new management at DEA HQ. DEA was entitled to determine that to the extent her remote work could be considered an accommodation prior, that when that work was not being performed well, it could try and take new steps to find a new accommodation. So, counsel, on that point, the issue of whether they had concerns about the way the plaintiff was operating, concerns about being remote, I think from my review of the record, those are articulated in the record. What I didn't see really articulated is any sort of like official, here are the problems we've identified with what you're doing, you need to correct them. And so my question is, is that required, or is it not required because this is an at-will employee and the real question is, why did you terminate them? Yes, Your Honor, I agree with your second premise. Tina Smith was an at-will subcontractor of DEA, and a high-level DEA employee made the determination that the program that she was working on, to which she has put her name, was not serving DEA's interest. It is certainly apparent from the record that the decision to move an entire program under new management constitutes a view that this needs to change. That certainly isn't something that's done arbitrarily. And then as the record does reflect, there are efforts by DEHQ members to try and get control over the resources that are coming, Tina and a co-contractor who are coming over to DEHQ. So while there isn't any explanation of the reason for the move at that moment, there's certainly unrebutted testimony in the record as to why Quinn made the decision to move those resources over. And then unrebutted documentary evidence over the course of May 2017 and into early June showing how difficult it was to work with these contractors. So let me follow up with that just a little bit because one of the concerns I had about the case, and you've addressed one of them, was quite frankly the district court's order and as it relates more than anything else, really to a couple things, it said that there were claims against the DEA for ADA and Rehab Act, which things happen. We all make mistakes. I think it's just the Rehab Act. But then on the retaliation claim under that act, the district court found that the ultimate supervisor, Ms. Quinn, had no knowledge of the EEO complaint. And that seems to be based on the record. And there is a timing area there that we often look at. I mean, you heard that the termination was soon after the knowledge. And so one could look at that and say maybe there's a question of fact there. But I'd ask you to consider whether the causation standard under the Rehab Act is relevant to that inquiry, which as I understand it is a solely causation standard. So if you could, on the one hand, I'm worried about the question of fact potentially based on timing, but I'm wondering whether the solely under the Rehab Act addresses that. Could you help me with that? And Judge Keenan may have a follow up with that. So I'm If you could piggyback on to Judge Quattlebaum's answer, the pain of commendage and whether that was just and how that plays into, as Judge Quattlebaum said, the Rehab Act requiring solely in distinct contrast to the ADA requirements. Certainly, Your Honor. Broadly, the district court, while there may be questions with respect to knowledge and with respect to the district court's holding on the prima facie case under the McDonnell Douglas standard, and we address that in our brief, the district court's alternative holding with respect to the fact that plaintiff had not overcome Quinn's legitimate non-retaliatory reason for terminating plaintiff's services still stands despite the issue with Quinn's affidavit. First, near knowledge, even assuming that Quinn knew of plaintiff's prior activity is not sufficient to establish pretext. Moreover, this court's own precedents, for example, in the Price case that we cited, require some kind of pretext or to find pretext in the event of a mistake. We cite some other examples of such cases in our brief. There is no evidence in the record that there was some kind of purposeful misstatement by Quinn on the question of her knowledge. Third, perhaps most importantly, plaintiff's burden on summary judgment was to rebut the legitimate non-retaliatory reason for Quinn's termination of her services. The question of Quinn's knowledge does nothing in that respect. It certainly does not undermine the reason, which is supported by many record citations, which are found at 36, 37, 41, and 42 of our brief, and plaintiff's own testimony in her deposition and her production of DEA documents from her personal possession in this very litigation. Plaintiff has pointed to no evidence beyond the EEO affidavit, which again is insufficient on its own to give the court any reason to doubt the legitimate non-retaliatory reason for her dismissal. Judge Keenan, with respect to the question of the chain of command, plaintiff's contract says that her deliverables as an independent contractor, and I think that certainly means her work product, is deliverable to the CTO, which was Mr. Schaffernick. It doesn't say anything about her requirement to provide information that's requested by other DEA employees. There's evidence in the record of Ms. Tyler particularly complaining, even before plaintiff filed an EEO complaint, that she was not getting responses to the questions she was asking. It's beyond dispute that a subcontractor, an employee, whoever you are, if you're working in a group, you're required to work well in that agency. What are you saying she was? Are you saying she was an employee? Your Honor, I think as the word is generally understood, we are saying that she is a subcontractor. For the purposes of the joint employer analysis and therefore whether or not DEA could be held liable under the Rehabilitation Act, we acknowledge that that was a closer question and therefore did not move on summary judgment for that reason. Unless the court has any further questions- I think you made it clear. You can't have it both ways. You just said that contract said that her deliverables were to one person, yet you say when you work at a team, you expect people to respond to everybody all around. That's what employees do. You're right, but you just said- but then she's fired because these other people who are not in her contract are saying, well, you're not coming to me. You're not doing what I want done. Is that what you're saying? Deliverables, right? That's who you deliver it to, right? Your Honor, she was not fired because she did not deliver documents or deliverables to the CTO. She was fired because she was completely unwilling to work with other members of the DEA team in assessing a program that had been put under her management. As the final denouement of that building tension, which is well documented in the record, Quinn understood that Plaintiff had been taking DEA documents on her personal computer. Whether that belief was mistaken, as this court's precedent holds, is not the question. It's just whether Quinn believed it to be true, but the fact that Plaintiff herself produced DEA documents in this action should only further lend support to the legitimacy of Quinn's reasoning. And for those reasons and the reasons stated in our brief, we respectfully request that this court affirm the district court's judgment. All right. Thank you. Mr. Ehrlich, you have some time reserved. I'm sorry, Mr. Ward. I'm sorry, Mr. Ward. I'm sorry. My fault. Mr. Ward. Good morning. My name is Joseph Ward and I'm here on behalf of Appellees CSRA, Inc. Plaintiff Appellant Smith has appealed only one issue as it pertains to CSRA, and that is whether the district court properly held that CSRA was not a joint employer with the DEA. This court should affirm the district court's holding on this issue because the record is clear that CSRA lacks sufficient control over Smith under the factors set forth by this court in the Butler vs. Drive auto case. I think the starting point is to reiterate that the district court correctly held that Smith was an independent contractor of CSRA and not an employee, an issue that Smith has not appealed and conceded in her brief and opening statement today. Consequently, to pursue claims against CSRA under the Americans with Disabilities Act, she must prove that one, she was an employee of the DEA, which as has been discussed today, was not an issue addressed in the lower court. And more importantly, that two, that CSRA was her joint employer with the DEA. As to whether CSRA was a joint employer, the district court's decision properly examined the relationship between and among the DEA and CSRA, insofar as the control over Ms. Smith. In other words, the district court correctly analyzed the degree of control vis-a-vis both entities, and the court found that the three most important factors weighed in favor against finding a joint employer relationship. The first factor was that CSRA had minimal control over Smith as her work was for DEA at DEA. She reported to a DEA supervisor and CSRA exercised no workplace supervision over her. The district court aptly characterized this relationship as CSRA's role was simply to provide an expert in the field relevant to the DEA. CSRA did that by finding Smith and instructing her to report to DEA subject to DEA requirements. In her brief, Smith argued similarly that at all times, from the start of her employment at DEA, that her work was completed at the direction of and under the supervision of DEA. Therefore, it's our position that the first Butler factor weighs against the finding of joint employment. Second, although CSRA had the contractual authority to terminate the contract with DEA, that directly caused the termination of the contract after Smith became incapable of fulfilling her contractual obligations to the DEA by virtue of the replication of her security clearance by the DEA. This court in the Green versus Harris matter distinguished the Butler case and noted that unlike in Butler, which was a staff and agency client relationship, in the Green case, there was no concern about the putative employer's ability to terminate an employee as if it was one of its own, but rather its ability to ensure that deliverables for the prime contract were met to the client's satisfaction. Similarly here, CSRA learned that Ms. Smith was not fulfilling her contractual obligations to DEA, had lost her credentials to be staffed on the DEA project and therefore terminated its contract as that was the basis for that contract. And then the third factor the court determined weighed in favor, third most important factor the court determined weighed in favor against joint employer finding is that CSRA furnished neither the workplace nor the equipment. In analyzing these three most important factors, contrary to Smith's position in her brief, the court necessarily premised a comparison on the control exerted by the DEA and by CSRA. So I think a kind of contention that the district court's analysis is flawed in some way is totally without merit. As far as discipline is concerned, the court noted that while in theory CSRA could mete out employee discipline, here that was not the case. She was not an employee and even when CSRA attempted to kind of confine her to the requirements of the DEA, she disregarded CSRA's encouragement. It's our position that merely encouraging an employee to adhere to the client's specifications hardly amounts to exerting sufficient control to qualify as a joint employer. The remaining Butler factors with the exception of CSRA's administration of Smith Global LLC's payments weighed against a joint employer relationship. This holding was in accord with Rattlage, which was decided by the Eastern District and affirmed by this court per curiam, as well as generally the Butler case. Although, as I mentioned earlier, the Butler case is distinguishable. Thus, it is our position that the district court correctly held that CSRA was not a joint employer of Smith and we ask that this court affirm for the reasons stated today, as well as more fully prove IR 23. Thank you, Mr. Roy. Mr. Early, you have time reserved. Thank you, Judge Gregory. Several things. I want to quickly address the timeline of 2017. CSRA determined that they were going to terminate Ms. Smith. On June 5, 2017, the DEA EEO office provided Ms. Smith with a parking pass. Importantly, appellees outside of their EEO office took no role in getting Ms. Smith that accommodation. She went to the DEA EEO office herself, going around normal chain of command because she desperately needed this accommodation. The DEA EEO office, to everyone's surprise, granted her the accommodation. The DEA office that she worked with and CSRA played no role in actually getting her that accommodation, which they had told her for more than a month was impossible for her to get. On June 7, just two days later, Scott Barnhart sent an email acknowledging the accommodation and saying that they were going to put her termination on hold, but then laying out a plan to then terminate her. Barnhart said, if I want to get this quote correct, Barnhart said that the DEA's time is too valuable for these constant distractions. By constant distractions, he meant protected activity. Right. The fact that she was trying to get accommodation, it was distractions, right? Exactly. Exactly right. It never accommodated her at all, right? She went to the EEO office, the DEA herself, right? Absolutely. Appellees have told her that this accommodation was impossible for any number of reasons, and that ended up simply being untrue. The DEA EEO office, when they were approached, took care of this for Ms. Smith, even though appellees had said it was impossible. Beyond that, the DEA's counsel mentioned that the fact that Ms. Quinn lied in her affidavit was not relevant to the question of the solely standard under the Rehabilitation Act, but it absolutely goes to pretext. The documents show Ms. Quinn found out about the informal EEO complaint that Ms. Smith had filed on June 2nd. She not only found out about it, but the documents show she set up a meeting to discuss it. Then seven days later, she revoked her security clearance, functionally terminating her. Within seven days of finding out about her complaint, she was fired. Yes, that is extraordinary temporal proximity. We have the documents to show she had knowledge, and we have the documents in the form of her affidavit that show she lied about that knowledge. It is, at minimum, a disputed issue of material fact, and I think a lot clearer than that. So, Mr. Ehrlich, can I stop there? Because I think that Chief Judge Gregory's question and your response are important. There is close temporal proximity here. One thing that's different, though, about these cases, all these things are pretty close in temporal proximity. So, whereas lots of times you have an event that is assumed before a termination that involves things that have gone on for a long time, here a lot of this came together pretty close to the time she was terminated. Maybe that makes a genuine issue of material fact, but does the word solely in the Rehabilitation Act matter? It seems to me that's a pretty important causation standard that we have to consider in the question of whether there is a genuine issue of material fact. Help me with that. Absolutely, Your Honor, and I think we can meet the Solis standard. Let me give you a couple of other bits of evidence that help us there. Scott Barnhart, in his deposition, said that the reason Ms. Smith's clearance was pulled was that she needed to show up to work. I don't have any reason other than that. And she didn't show up to work because she could not, because she was not accommodated in a way that would let her come to work. And that's in the record, correct? Yes. And that speaks to Solis, does it not? Absolutely, it does. And Scott Barnhart, in his deposition, also said the government asked that she show up to work and she's not showing up. We're big people here. We're professionals. If you can't do what the expectation and the role requires, maybe you should go elsewhere. And again, she wanted to do exactly what was required, but could not because she could not get the accommodation she needed. What about the parking space? How does that play in time-wise? Are you saying we totally discount the fact that they did give her the parking space because there was the time period that elapsed? It seems to me at the time she was terminated, he did have a parking space and she wasn't showing up. So how do we deal with that? Well, there were just a few days there and I would need to check the record to confirm whether she came into the office after June 5th. But the decision to terminate her had already been made at that point. As a matter of fact, Mr. Earley, you said they put the termination decision on hold or something like that already, correct? Yes. So they made the accessible parking on June 5th. I don't believe Ms. Smith ever actually received the accessible parking tag because just a few days later than that, just four days later, her security clearance was revoked and then she was functionally terminated. She didn't have enough time not to show up after she got the pass, basically. That's exactly correct, Your Honor. Remember, this is summary judgment. We're appellate courts. We can't decide it based on... This is an important thing. That's why these courts are to protect people who are otherwise able in the law and those types of things, correct? Absolutely, Your Honor. And I think at absolute minimum, these are disputed issues of material fact. In fact, I don't see how it's a call to even move for summary judgment on. And CSRA argued that it's something that should be granted where there's no disputed issues of material fact. It is a joint analysis between the two entities. There are disputed issues here and only a fact finder should be addressing. Okay, but they can't concede an issue of law. If we say that their analysis is entirely wrong because she was a self-proclaimed independent contractor, then it doesn't really matter what they conceded about joint employment if we say the DEA wasn't a joint employer. I mean, might have been because that wouldn't matter at all, would it? So, if that's the finding that this court reaches, then that is the threshold question. But, again, I will just highlight that Garrett and Butler and all of their progeny, obviously much more with Garrett because it's a 40-year-old case, all look to the economic realities and while they note the intention of the parties, it is the 11th and least important factor. Everybody in this case, all of the parties could have said and signed as much paperwork as they wanted that she was an independent contractor, but that is only one of many factors that go into the decision of whether this court actually determines she was an independent contractor. As a matter of fact, it's a mixed question of fact and law, isn't it? That's right. The sort of which I don't see how it could be determined on summary judgment, Okay. Do you know of any cases in any other circuit, Mr. Ehrlich, where somebody was a self-proclaimed independent contractor, not just the intent of the parties, but that they signed a statement saying I'm an independent contractor and a court of appeals nevertheless held that they were entitled to argue that they were an employee under the circuit? Your Honor, I don't recall if in Selena, Luna Reyes, or AT&T, any of those individuals signed a document saying that they were an independent contractor, but as I mentioned, all of those were cases where they were ultimately found to be employees and joint employees. The answer to your question is no, because I have not looked at that. I thought we had sufficient in-circuit authority, but if the court's interested in supplemental briefing, we'd be happy to put that together. I mean, we draw from analogies, don't we, in other places that, for example, in terms of working exempt and non-exempt employees, and if an employer just called everybody exempt, we don't just take by the label, do we? We look at what they do and what's the control, do we not? Absolutely. That's the nature of the hybrid analysis. It is not just an economic realities test or just a test of the formalities. I was just going to say if there aren't any more questions, then I thank the court for your presentation. We appreciate it. We can't come down and greet you as we do in our normal both-circuit tradition, but nonetheless, we appreciate your presence and your contribution to help us decide these difficult issues. Be safe and stay well. Thank you. Thank you, Your Honor.
judges: Roger L. Gregory, Barbara Milano Keenan, A. Marvin Quattlebaum Jr.